IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHANELLE OLIPHANT o.b.o. Q.O., | ) | CASE NO. 5:16 CV 1091 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

Before me[1] is an action by Shanelle Oliphant o.b.o. Q.O. under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying Q.O.'s application for supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and procedural[6]

---

[1] ECF # 14. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 9.

[4] ECF # 10.

[5] ECF # 5.

[6] ECF # 11.

orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

## Facts

### A. Background facts and decision of the Administrative Law Judge ("ALJ")

Q.O. who was 4 years old at the time of the administrative hearing,[11] lives with his mother and his two siblings.[12] He was born missing part of his left arm below his elbow.[13]

The ALJ, whose decision became the final decision of the Commissioner, found that Oliphant had the following severe impairments: asthma and amniotic band sequence of the left upper extremity with amputation of the left hand (20 CFR 416.924(C)).[14] The ALJ determined, however, that the child did not have an impairment or combination of

---

[7] ECF # 18 (Commissioner's brief); ECF # 15 (Oliphant's brief); ECF # 20 (Oliphant's reply brief).

[8] ECF # 19 (Commissioner's charts); ECF # 15-1 (Oliphant's charts).

[9] ECF # 15-2 (Oliphant's fact sheet).

[10] ECF # 22.

[11] ECF # 15-2 at 1.

[12] ECF # 10, Transcript ("Tr.") at 47-48.

[13] *Id*. at 48.

[14] *Id*. at 21.

impairments that met, equaled, or functionally equaled any impairment listed in Appendix 1.[15] He concluded, therefore, that Q.O., was not under disability.[16]

**B.      Issues on judicial review**

Oliphant asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Oliphant presents the following issues for judicial review:

- Whether the ALJ erred in finding that Q.O. did not have a second marked impairment in either caring for yourself or health and physical well-being.[17]

- Whether the ALJ improperly found that Q.O. did not meet or medically equal a listed impairment.[18]

For the reasons that follow, I will conclude that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

## Analysis

**A.      Standards of review**

***1.      Substantial evidence***

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

---

[15] *Id.*

[16] *Id.* at 32.

[17] ECF # 15 at 1.

[18] *Id.* at 2.

Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[19]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[20] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[21]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

---

[19] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[20] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[21] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

## 2. *Listing requirement-Appendix 1*

If a claimant's impairment meets or equals one listed in Appendix 1 of the regulations, the claimant is presumed disabled without regard to age, education, or work experience.[22] The claimant bears the burden of proof that his impairment meets or equals a listed impairment.[23] In order to meet the requirements of a listed impairment, the claimant must meet all of the elements of the listing.[24] A claimant may prove equivalency to a listed impairment by presenting "medical findings equal in severity to *all* criteria for the one most similar listed impairment."[25]

## B. Application of standards

Initially, I set forth what I originally detailed in *Orr v. Commissioner of Social Security*[26] as to the relevant standards applicable to claims for children's SSI benefits:

The Social Security regulations set forth a three-step sequential analysis for determining whether a child is disabled for purposes of qualifying for children's SSI benefits:

> The Social Security regulations set forth a three-step sequential analysis for determining whether a child is disabled for purposes of qualifying for children's SSI benefits:

---

[22] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

[23] *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

[24] *Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1984).

[25] *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2002), quoting *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis in the original).

[26] *Orr v. Comm'r of Soc. Sec.,* No.*,* 1:11 CV 192, 2012 WL 4504503 (N.D. Ohio Sept. 30, 2012).

1. Is the child engaged in any substantial gainful activity? If so, benefits are denied.

2. Does the child have a medically severe impairment or combination of impairments? If not, benefits are denied.

3. Does the child's impairment meet, medically equal or functionally equal any in the Listing of Impairments, Appendix I of 20 C.F.R., pt. 404, subpt. P 20 C.F.R. § 416.924(a)? If so, benefits are granted.[32] An impairment which meets or medically equals the severity of a set of criteria for an impairment in the Listing, or which functionally equals a listed impairment, causes marked and severe functional limitations.[33]

In determining whether a child's impairment functionally equals a Listing, the adjudicator must assess the child's functioning in six domains:

1. Acquiring and using information;

2. Attending and completing tasks;

3. Interacting and relating with others;

4. Moving about and manipulating objects;

5. Caring for yourself; and

6. Health and physical well-being.[34]

To functionally equal an impairment in the Listings, an impairment must result in "marked" limitations[35] in two domains of functioning or an "extreme" limitation[36] in one domain.[37] The relevant factors that will be considered in making this determination are (1) how well the child initiates and sustains activities, how much extra help he or she needs, and the effects of structured or supportive settings; (2) how the child functions in school; and (3) how the child is affected by his or her medications or other treatment.[38]

If the child's impairments meet, medically equal, or functionally equal the listings, and if the impairments satisfy the durational requirement, then the child is considered disabled.[39] If both of these requirements are not met, then the child is not considered disabled.[40]

In addition, when determining functional equivalence, Social Security Ruling (SSR) 09–1p directs the ALJ to consider the "whole child." This approach requires the ALJ to consider the following:

1. How does the child function? "Functioning" refers to a child's activities: that is, everything a child does throughout the day at home, at school, and in the community, such as getting dressed for school, cooperating with care givers, playing with friends, and doing class assignments. We consider:

• What activities is the child able to perform?

• What activities is the child not able to perform?

• Which of the child's activities are limited or restricted?

• Where the child has difficulty with activities—at home, in childcare, at school, or in the community,

• Whether the child has difficulty independently initiating, sustaining, or completing activities,

• The kind of help, and how much help the child needs to do activities, and how often the child needs it, and

• Whether the child needs a structured or supportive setting, what type of structure or support the child needs, and how often the child needs it.

2. Which domains are involved in performing the activities? We assign each activity to any and all of the domains involved in performing it. Many activities require more than one of the abilities described by the first five domains and may also be affected by problems that we evaluate in the sixth domain.

3. Could the child's medically determinable impairment(s) account for limitations in the child's activities? If it could, and there is no evidence to the contrary, we conclude that the impairment(s) causes the activity limitations we have identified in each domain.

4. To what degree does the impairment(s) limit the child's ability to function age-appropriately in each domain? We consider how well the child can

initiate, sustain, and complete activities, including the kind, extent, and frequency of help or adaptations the child needs, the effects of structured or supportive settings on the child's functioning, where the child has difficulties (at home, at school, and in the community), and all other factors that are relevant to the degree of the determination of the degree of limitation.[41]

It is important to note—as federal courts in Ohio have recently observed[42]—that SSR 09–1p also states:

However, we do not require our adjudicators to discuss all the considerations in the sections below in their determinations and decisions, only to provide sufficient detail so that any subsequent reviewers can understand how they made their findings.[27]

## 1. *Caring for yourself*

Here, Oliphant first challenges the ALJ's finding that Q.O. has a less than marked limitation in the domain of caring for yourself.[28] To that end, the ALJ first recited on the record the skills, behaviors and attitudes, as set out in the regulations, that should be manifest by a child with no impairment in this domain,[29] followed by "examples of limited functioning" that would demonstrate limitations in this domain.[30]

Then, the ALJ analyzed the record and concluded that Q.O. has less than marked limitations in the ability to care for himself, stating his reasons as follows:

<u>The claimant has less than marked limitation in the ability to care for himself</u>
As noted above, there is minimal evidence that the claimant's medical conditions impair his ability to seek fulfillment of his physical and emotional

---

[27] *Id*. at **2-4 (footnotes omitted).

[28] ECF # 15 at 11-14.

[29] Tr. at 30-31 (citing and quoting regulations).

[30] *Id*. at 31 (citing and quoting regulations).

needs in an age-appropriate manner. Mrs. Oliphant testified that the claimant becomes discouraged and frustrated by the level of assistance he requires with daily activities relative to his twin brother. However, the claimant has not required counseling or other such treatment for these emotional concerns and there is no evidence that they pose a significant obstacle to the claimant's care. This finding is consistent opinion of psychologists that reviewed the claimant's case file at the request of the State Agency and the testimony of Dr. Nimmagadda (IA, 3A and testimony).[31]

Oliphant argues first that the ALJ's reasons here focus on emotional issues, but the Ruling includes the ability to perform age appropriate activities.[32] As was stated in her reply brief, "the ALJ should have considered Q.O's inability to perform these self care tasks [such as the ability to feed, dress, bathe or toilet self appropriately] under this functional domain [and not exclusively under the domain of health and physical well-being]."[33] As regards findings on emotional issues that were made, Oliphant also asserts that "no psychologists reviewed the evidence for the State Agency,"[34] and further contends that the ALJ improperly discounted the testimony of Q.O.'s mother as the difficulty Q.O. has as the result of the loss of his left arm.[35]

The Commissioner has explained that the ALJ in one portion of the opinion incorrectly referred to the state agency physicians as "psychologists" rather than as

---

[31] *Id.*

[32] ECF # 15 at 11.

[33] ECF # 20 at 1-2.

[34] ECF # 15 at 11.

[35] *Id.* at 12-13.

pediatricians.[36] The state agency sources were properly identified elsewhere in the opinion as board-certified pediatricians, and both sources opined that Q.O. had no limitation in the domain of caring for yourself.[37] The ALJ gave these opinions, which are discussed in detail, great weight.[38]

The ALJ also gave great weight to the testimony of Dr. Sai R. Nimmagadda, M.D., who reviewed the record and testified as a medical expert at the hearing.[39] The ALJ discussed the testimony as follows:

> Sai R. Nimmagadda, M.D., a Board-certified physician and impartial medical expert, reviewed the claimant's case file in preparation for the hearing of this matter and listened to the testimony of Mrs. Oliphant. Based on his review of the medical evidence, Dr. Nimmagada concluded that the claimant's absence of his left hand and asthma are severe, medically determinable impairments. He indicated that the claimant's impairments do not meet or medically equal the criteria of Listing 101.02, 101.05 and 103.03. Dr. Nimmagada further concluded that the claimant's absence of a left hand without a prosthetic results in marked limitation of his ability to move about and manipulate objects. He indicated that the claimant's ability to care for himself and his physical health and well-being are not markedly limited as he retains good functioning of the right hand and his asthma is well controlled.
>
> Dr. Nimmagadda had the opportunity to review all of the medical evidence submitted in support of the claimant's application. His conclusions were well supported by direct references to the medical evidence of record. Dr. Nimmagadda testified during the hearing and his testimony was subject to the cross examination of the claimant's representative. Accordingly, the undersigned gave Dr. Nimmagadda's opinions great weight.

---

[36] See, ECF # 18 at 17 fn 7.

[37] Tr. at 31.

[38] Tr. at 24-25.

[39] *Id.* at 25.

Debra Shifrin, the claimant's representative argued that Dr. Nimmagadda gave insufficient consideration to Mrs. Oliphant's testimony as to the claimant's difficulties caring for himself relative to his twin brother and inability to dress himself and use the restroom independently.

Mrs. Shifrin's argument is persuasive, on its face, but belies a misinterpretation of the appropriate criteria for consideration with regard to the claimant's ability to care for himself Social Security Ruling (SSR) 09-7 provides that the domain of "caring for yourself' considers a child's ability to maintain a healthy emotional and physical state including, getting their emotional and physical wants and needs met in appropriate ways, coping with stress and changes in the environment and caring for their own health, possessions and living area. "However, the domain of 'Caring for yourself does not address children's physical abilities to perform self-care tasks like bathing, getting dressed, or cleaning up their room. We address these physical abilities in the domain of "Moving about and manipulating objects" and, if appropriate, 'Health and physical well-being"' (SSR 09-7).[40]

Finally, the ALJ did consider the testimony of Oliphant, but found that notwithstanding the fact that Q.O. can get "discouraged" by his need for greater assistance in performing various actions, or that he can get "frustrated" when he is given assistance, "there is no evidence that these feelings interfere with [Q.O.'s] ability to appropriately seek assistance in meeting his emotional and physical needs."[41]

Accordingly, and for the reasons stated, I find that substantial evidence supports the finding of the ALJ as to the domain of caring for yourself.

---

[40] *Id*. at 25-26.

[41] *Id*. at 26.

## 2. *Health and physical well-being*

Here, as before, the ALJ began his analysis by setting out the elements of this domain, which essentially addresses "the cumulative physical effects of physical and mental impairments" that "were not considered in the evaluation of the child's ability to move about and manipulate objects."[42] The ALJ then reviewed some examples of what constitutes limited functioning in this area, and then concluded:

> This domain considers the cumulative physical effects of physical and mental impairments and any associated treatments or therapies on a child's health and functioning that were not considered in the evaluation of the child's ability to move about and manipulate objects. Unlike the other five domains of functional equivalence, which address a child's abilities, this domain does not address typical development and functioning. The "Health and Physical Well-Being" domain addresses how recurrent-ent illness, the side effects of medication, and the need for ongoing treatment affect the child's health and sense of physical well-being (20 CFR 416.929a(l) and SSR 09-8p).
>
> Social Security regulation 20 CFR 416.926a(l)(3) and SSR 09-8p set forth some examples of limited functioning in this domain that children of any age might have; however, the examples do not necessarily describe marked or extreme limitation in the domain. Some examples of difficulty children could have involving their health and physical well-being are: (I) generalized symptoms, such as weakness, dizziness, agitation (e.g., excitability), lethargy (e.g., fatigue or loss of energy or stamina), or psychomotor retardation because of any impairment(s);(ii) somatic complaints related to an impairment (e.g., seizure or convulsive activity, headaches, incontinence, recurrent infections, allergies, changes in weight or eating habits, stomach discomfo1t, nausea, headaches or insomnia); (iii) limitations in physical functioning because of need for frequent treatment or therapy (e.g., chemotherapy, multiple surgeries, chelation, pulmonary cleansing, or nebulizer treatments); (iv) periodic exacerbations from an impairment( s) that interfere with physical functioning (e.g., pain crises from sickle cell anemia); or (v) medical fragility requiring intensive medical care to maintain level of health and physical well-being.

---

[42] Tr. at 31.

The claimant has less than marked limitation in health and physical well-being. The claimant retains normal functioning of his right hand. His history of asthma appears well controlled as progress notes of his treating physician document no signs of persistent respiratory impairment (2F/4, 7 and 7F/2). This finding is consistent opinion of psychologists that reviewed the claimant's case file at the request of the State Agency and the testimony of Dr. Nimmagadda (IA, 3A and testimony).[43]

While it is clear that Q.O. has limitations arising from the lack of use of his left arm, this analysis is appropriately done under the domain of moving and manipulating objects.[44] Moreover, as detailed above, that the ALJ did discuss on the record the relevant evidence and found, consistent with the opinions of the two state agency physicians and the medical expert, that Q.O. had less than marked limitations in this domain.

Therefore, for the reasons stated, I find that substantial evidence supports the finding of the Commissioner that Q.O. has less than marked limitations in the domain of health and physical well-being.

### 3. *Meeting or Medically Equaling a Listing*

Here, the ALJ expressly considered if Q.O. met Listing 101.05 (amputation due to any cause) and Listing 103.03 (asthma).[45] The ALJ noted that the state agency reviewers concluded that Q.O. does not meet a listing or medically equal a listing.[46] Indeed, as more

---

[43] *Id.*

[44] See, ECF # 18 at 19 (citing SSR 09-8p, 2009 WL 396030, at *2).

[45] Tr. at 21.

[46] *Id*.

fully discussed above, the ALJ reviewed in some detail within his opinion the opinion evidence, and the relevant testimony, in assembling the reason for the conclusion that Q.O. had not met or equaled a listing.[47] Finally, as I noted in *Blanton v. Commissioner of Social Security*,[48] the claimant bears the burden of showing that a listing has been met, and in the absence of an opinion in that regard from a treating source, "the ALJ may rely on the report of state agency reviewing sources consistent with the medical evidence."[49]

Accordingly, I find that substantial evidence supports the finding of the Commissioner that Q.O. does not meet of medically equal a listing.

## Conclusion

As the Commissioner observes, that "this case is not one where the ALJ found that Q.O. has no limitations," but one where the ALJ found that these limitations "did not rise to listing-level severity."[50] For the reasons stated, I find that substantial evidence supports the decision of the Commissioner to deny benefits in this case, and that decision is hereby affirmed.

IT IS SO ORDERED.

Dated: September 27, 2017　　　　　　　　　　s/ William H. Baughman, Jr.
　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

---

[47] *Id*. at 21-25.

[48] *Blanton v. Comm'r of Soc. Sec.,* No. 1:14 CV 2468, 2016 WL 775296 (N.D. Ohio Feb. 29, 2016).

[49] *Id.* at *4.

[50] ECF # 18 at 19 (citing record).